UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 18-1162 JGB (SPx)** | Date | June 12, 2020 |
| Title | *Andrew Dominguez v. United Parcel Service, Co., et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order (1) DENYING Plaintiff's Motion for Class Certification (Dkt. No. 88); and (2) VACATING the June 15, 2020 Hearing (IN CHAMBERS)

Before the Court is Andrew Dominguez's ("Plaintiff") motion for class certification. ("Motion," Dkt. No. 88.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the matter, the Court DENIES the Motion and VACATES the hearing scheduled for June 15, 2020.

I. BACKGROUND

**A. Procedural Background**

On April 26, 2018, Andrew Dominguez ("Plaintiff") commenced this putative class action against United Parcel Service, Inc. ("UPS"), in California Superior Court for the County of San Bernardino. (Dkt. No. 1.) In May 2018, UPS removed the action to this Court, (id.) and on February 1, 2019, Plaintiff filed a First Amended Complaint, ("FAC," Dkt. No. 25.) The FAC asserts six causes of action: (1) violation of California Business and Professions Code § 1700, et seq.; (2) failure to provide meal breaks in violation of Cal Labor Code § 226.7; (3) failure to pay meal break penalty in violation of Cal. Labor Code § 226.7, 512, et seq.; (4) failure to allow rest breaks in violation of Cal. Labor Code § 226.7; (5) failure to provide and maintain accurate wage statements in violation of Cal. Labor Code § 226; and (6) Private Attorney General Act, California Labor Code §§ 2698-2699 ("PAGA"). (Compl.) On February 26, 2020, the Court denied UPS's motion to strike. ("MTS Order," Dkt. No. 48.)

Plaintiff filed the Motion on May 18, 2020. (Mot.) In support of the Motion, Plaintiff submitted a memorandum of fact and law, ("Memorandum," Dkt. No. 96), the declaration of Robert Bright, ("Bright Decl.," Dkt. No. 88-1 (attaching Exhibits A to U)), the declaration of Scott Russo, ("Russo Declaration," Dkt. No. 88-2 (attaching the same Exhibits)), and a compendium of declarations from UPS workers, ("Plaintiff's Compendium," Dkt. No 89; see also Dkt. Nos. 98, 100 (further declarations)). Defendant opposed the Motion on May 25, 2020, ("Opposition," Dkt. No. 102), and included several declarations in support of the Opposition, (Dkt. Nos. 103-107), evidentiary objections, (Dkt. Nos. 108-109, 113), a request for judicial notice, ("RJN," Dkt. No. 110)[1], and a compendium of evidence, ("Defendant's Compendium," Dkt. No. 111). Plaintiff filed a reply on June 1, 2020, ("Reply," Dkt. No. 112), and included another declaration, (Dkt. No. 114), and evidentiary objections, (Dkt. Nos. 115-117).

**B. Factual Background**

Plaintiff was hired by Defendant as a part-time employee in 2011 and was actively employed until September 2017. (Dominguez Decl. ¶¶ 2-4.) Defendant operates a "Sort Hub Facility" in Ontario, California, where thousands of packages are processed each hour, serving more than a dozen states in the region. (Pl.'s Compendium, Ex. T.) Thousands of employees work at the facility, and their work is divided into ten shifts or "sorts" throughout the day. (Dominguez Decl. ¶ 6.) Two to three hundred seasonal and part time employees work the "PreLoad" sort, from 3:30 a.m. to 9:30 a.m. (Pl.'s Compendium, Ex. U at 5.) The PreLoad sort is one of the most time-sensitive operations, because workers must load trucks before early morning deliveries. (Dominguez Decl. ¶ 8.) Workers are guaranteed 3.5 hours per shift but frequently work beyond 3.5 hours, especially during the peak season, and they often work shifts in excess of eight hours. (Id. ¶¶ 11-14.)

Plaintiff argues Defendant's policies on meal and rest breaks essentially restate the law and provide little guidance to supervisors on such essential questions as how to schedule breaks, who permits an employee to take a break, or how an employee can request a break. (Mem. at 7.) For example:

- UPS 944-945 states: "First Meal period requirement - you are entitled to a first meal period lasting a minimum of 30, uninterrupted minutes when you work more than 5 hours . . . meal periods must be separated by at least one hour and must end prior to the last 30 minutes of work . . . You are required to take a meal period when instructed to do so."
- UPS0000944-945 states: "You are entitled and permitted to take your rest periods as follows: (1) a paid rest period of at least 10 minutes within the first four hours of work; (2) a second paid rest period of at least 10 minutes for any

---

[1] The RJN attaches a decision in similar class certification motion decided in UPS's favor in July 2, 2019. (RJN, Ex. A.) The Court GRANTS the RJN, because the decision is on file in federal court and is the appropriate object of judicial notice. Harris v. Cnty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012) (internal citations omitted).

> employee who works in excess of six hours; and (3) an additional 10-minute paid rest period for any employee who works more than 10 hours. The timing of rest periods to be taken will be determined by management following the general practice for your facility."

(Pl.'s Compendium, Ex. H.)  Plaintiff claims that UPS schedules PreLoad sort employees for the minimum 3.5-hour shift, which only notes the start time and does not build in rest or meal periods.  (Mem. at 9.)  UPS knows, however, that many of the shifts will exceed 5 hours during peak season, and many employees will not ultimately obtain their meal or rest breaks.  (Id.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 23 ("Rule 23") governs the litigation of class actions.  A party seeking class certification must establish the following prerequisites:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  After satisfying the four prerequisites of numerosity, commonality, typicality, and adequacy, a party must also demonstrate one of the following: (1) a risk that separate actions would create incompatible standards of conduct for the defendant or prejudice individual class members not parties to the action; (2) the defendant has treated the members of the class as a class, making appropriate injunctive or declaratory relief with respect to the class as a whole; or (3) common questions of law or fact predominate over questions affecting individual members and that a class action is a superior method for fairly and efficiently adjudicating the action.  See Fed. R. Civ. P. 23(b)(1)–(3).[2]

A trial court has broad discretion regarding whether to grant a motion for class certification.  See Bateman v. Am. Multi-Cinema, Inc., 623 F.3d 708, 712 (9th Cir. 2010).  However, "[a] party seeking class certification must affirmatively demonstrate compliance with [Rule 23]—that is, the party must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).  A district court must conduct a "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim."  Id. at 351.  "Courts typically proceed claim-by-claim in determining whether the Rule 23 requirements have been

---

[2] While some circuits have adopted an "ascertainability" prerequisite to certification, the Ninth Circuit has not.  Briseno v. ConAgra Foods, Inc., 844 F.3d 1121, 1124 n.4 (9th Cir. 2017) ("ConAgra cites no other precedent to support the notion that our court has adopted an 'ascertainability' requirement.  This is not surprising because we have not.  Instead, we have addressed the types of alleged definitional deficiencies other courts have referred to as 'ascertainability' issues . . . through analysis of Rule 23's enumerated requirements.").

met, particularly as to the Rule 23(a)(2) and (b)(3) requirements of common questions and predominance." Allen v. Verizon California, Inc., 2010 WL 11583099, at *2 (C.D. Cal. Aug. 12, 2010).

Rule 23 further provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues," Fed. R. Civ. P. 23(c)(4), or the "class may be divided into subclasses that are each treated as a class under this rule," Fed. R. Civ. P. 23(c)(5). "This means that each subclass must independently meet the requirements of Rule 23 for the maintenance of a class action." Betts v. Reliable Collection Agency, Ltd., 659 F.2d 1000, 1005 (9th Cir. 1981).

### III. CLASS CERTIFICATION

**A. Class Definition**

Plaintiff seeks certification of the following Class and Subclasses, pursuant to Rule 23(b)(3):

> [A]ll current and former California-based non-exempt part-time/seasonal hourly employees who worked for the Defendant[]'s facilities located in Ontario, California in the PreLoad Sort from August 11, 2013 to the present.
>
> Meal Break Penalty Subclass: All current and former California-based non-exempt part-time/seasonal hourly employees who worked for the Defendant[]'s facilities located in Ontario, California in the PreLoad Sort and who worked a shift in excess of 5 hours during the period from August 11, 2013 to the present.
>
> Rest Period Penalty Subclass: All current and former California-based non-exempt part-time/seasonal hourly employees who worked for the Defendant[]'s facilities located in Ontario, California in the PreLoad Sort who worked a shift in excess of 6 hours from August 11, 2013 to the present.
>
> Wage Statement Penalty Subclass: All current and former California based non-exempt part-time/seasonal hourly employees who worked for the Defendant[]'s facilities located in Ontario, California in the PreLoad Sort from August 11, 2013 to the present.

(Mot. at 2.)

//
//
//
//
//

### B. New Theories or Claims

UPS contends that Plaintiff seeks class certification based on theories or claims not pleaded in the operative complaint. (Opp'n at 8-9.) In particular, UPS remarks the FAC premises liability on timecard alterations that deprived Plaintiff and putative class members of meal period premiums. (Id. (citing FAC ¶¶ 2, 3, 4, 7).) The Motion pivots to a new theory: meal and rest break violations result from a failure to affirmatively "schedule and coordinate" breaks. Defendant argues this "policy" has nothing to do with the alleged timecard alterations. Finally, Defendant stresses that the second proposed subclass, on rest breaks, was not mentioned in the FAC at all. (Id.) Defendant urges the Court to deny the Motion on this basis alone. (Id.)

Defendant's arguments lack merit. First, the FAC does include a rest period class. (FAC ¶ 26 ("All . . . employees . . . who were not provided legally-compliant rest periods (Rest Period Class).") Second, the FAC defined the "Meal Break Class" broadly to include employees "who were not provided legally-compliant meal periods," and therefore the FAC did not define the class only in terms of altered timecards. (Id.) To be sure, the introductory paragraphs of the FAC allege a practice of altering time cards, but a fair reading of the FAC would allow Defendant to infer this was provided as an example of Defendant's attempt to cover up a broader "refusal to allow and properly compensate . . . for meal and rest breaks." (FAC ¶ 2 (also broadening the claim to encompass "such activities" that are aimed at increased productivity or cost cutting and that result in lost meal breaks).) The allegations in the FAC permit an inference that some underlying practice or condition at the Ontario facility results in the denial of meal or rest breaks.

Although the allegations in the FAC are broad, the Court has not had occasion to consider whether they are impermissibly overbroad, conclusory, or impermissibly vague, because Defendant never moved to dismiss or to clarify the scope of the claims. Moreover, courts routinely narrow broad class definitions at the certification stage. Carter v. Anderson Merchandisers, LP, 2008 WL 2783193, at *3 (C.D. Cal. July 10, 2008). In the final analysis, however, the Court need not decide Motion on this question. The asserted theories fail to meet Rule 23(a)'s commonality and Rule 23(b)(3)'s predominance requirements, and may be rejected on those grounds.

### C. Commonality and Predominance

The commonality requirement is satisfied when plaintiffs assert claims that "depend upon a common contention . . . capable of classwide resolution—which means that a determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart, 564 U.S. at 350 ("What matters to class certification . . . is not the raising of common questions . . . but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.") (internal quotation marks and citations omitted). Differences among putative class members can impede the generation of such common answers. Id. In the Ninth Circuit, "Rule 23(a)(2) has been construed permissively. . . . The existence of shared legal issues with divergent factual predicates is

sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." Staton v. Boeing Co., 327 F.3d 938, 953 (9th Cir. 2003).

Rule 23(b)(3) requires (1) issues common to the whole class to predominate over individual issues and (2) that a class action be a superior method of adjudication for the controversy. See Fed. R. Civ. P. 23(b)(3). As to predominance, the Court asks whether "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication"; if so, "there is clear justification for handling the dispute on a representative rather than on an individual basis." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting 7A Charles Alan Wright et al., Federal Practice & Procedure § 1778 (2d ed. 1986)), overruled on other grounds by Wal-Mart, 564 U.S. 338 (2011).

Plaintiff presents three questions he contends are common and which predominate, one for each subclass: (1) whether Defendant failed to provide or discouraged full thirty-minute, off-duty meal periods for part-time employees who worked more than 5 hours; (2) whether Defendant failed to provide or discouraged second and/or third ten-minute, off-duty rest breaks for part-time employees who worked 6 hours or more; and, (3) whether Defendant regularly issued wage statements that failed to properly identify all hours worked and wages earned. (Mem. 16.) The Court examines each in turn.

### 1. Meal Breaks

An employer's meal period obligations are not satisfied unless the employee (1) has at least 30 minutes uninterrupted, (2) is free to leave the premises, and (3) is relieved of all duty for the entire period. Brinker, 53 Cal. 4th at 1036. Additionally, "the wage orders and governing statute do not countenance an employer's exerting coercion against the taking of, creating incentives to forgo, or otherwise encouraging the skipping of legally protected breaks." Id. at 1040.

Plaintiff states the common question is "did UPS, by failing to actively schedule rest breaks and meal breaks for its part-time/seasonal employees, create a situation that discouraged or impeded the taking of these breaks?" (Mem. at 18.) But as Defendant points out, (Opp'n at 11), UPS is not obligated to police meal breaks or even to actively schedule them. Instead, UPS is only required to relieve employees and permit them a reasonable opportunity to take an uninterrupted break, and "not impede or discourage them from doing so." Brinker, 53 Cal. 4th at 1040. As a result, the answer to Plaintiff's question will not "in one stroke" resolve an issue "central" to the meal break claim.

Similarly, Plaintiff contends that UPS has previously scheduled lunches on Mondays and recently began scheduling lunches during the week as well, and therefore "could have been scheduling these lunch breaks in the past." (Mem. at 19.) Whether or not UPS could have scheduled lunch breaks in the past, however, does not resolve whether on a given day, with respect to a given worker, a supervisor authorized a lunch break.

Even assuming Plaintiff could show the existence of a policy of discouraging meal breaks during "peak" times, the Court is not persuaded—in the narrow facts presented by this case—that the existence of the policy would predominate over individual issues. Individual issues include whether a given day was a peak day, whether the employee was provided an opportunity to take a meal break on a given day by a particular supervisor, whether the employee waived the meal period, and whether UPS paid a meal premium (assuming the meal period was not taken and was not waived). (Opp'n at 13.)

### 2. Rest Breaks

"An employer is required to authorize and permit the amount of rest break time called for under the wage order for its industry. If it does not . . . it has violated the wage order and is liable." Brinker, 53 Cal. 4th 1033. Under the wage order applicable here, the employer must authorize and permit "ten (10) minutes net rest time per four (4) hours or major fraction thereof." Cal. Code Regs. tit. 8, § 11040.

Plaintiff contends that Defendant does not have an affirmative policy for implementing breaks after an employee has worked in excess of 6 or 10 hours. (Mem. at 20.) In particular, "no clear direction was given and the supervisors were left with unfettered discretion to call breaks merely when it coincided with some other interruption in production - such as the breakdown of a conveyor belt." (Mem. at 20.) UPS responds that its rest break policy is to provide a 10-minute duty-free paid rest break for every four hours of work or a major fraction thereof, and to provide for breaks thereafter. (Opp'n at 13 (citing Loo Decl. ¶¶ 4-5, Ex. A (providing instructions to supervisors in May 2012, including "[a]ny employee who works in excess of six hours shall be afforded a second paid rest period of at least 10 minutes. Any employee who works in excess of ten hours will be permitted to take a third paid 10-minute rest period"), Ex. B (providing the same and noting the specific timing will be determined by management at each facility)); Def.'s Compendium Tab 1.)

As with the meal claims, Plaintiff does not cite authority for the proposition that a facially lawful policy delegating authority to supervisors to implement that policy is per se unlawful, let alone that it creates a common issue suitable for classwide resolution. See, e.g., Gonzalez v. Millard Mall Services, Inc., 281 F.R.D. 455, 462 (S.D. Cal. 2012) (finding lack of commonality in which facially lawful rest break policy stated employee was permitted to take 10-minute rest break for each 4 hours period and rests should be approximately in the middle of the first four-hour period). Even if the referenced policy were legally suspect, its existence would not necessarily tell the Court the requisite rest breaks were or were not provided, on any given day or with respect to any given worker. As a result, the Court also has doubts that the common issue—as framed by Plaintiff in this case—would predominate.

### 3. Wage Statements

As Plaintiff acknowledges, the "common question regarding wage statements is largely driven by the two other questions." (Mem. at 21; see also Opp'n at 25.) Plaintiff fails to

demonstrate commonality or predominance for the meal and rest break claims. Consequently, his derivative wage statement claims do not satisfy the Rule 23 prerequisites either.

## IV. CONCLUSION

The Court determines that the commonality or predominance requirements have not been met for each of the proposed classes. Accordingly, the Court DENIES Plaintiff's motion for class certification and VACATES the June 15, 2020 hearing.

**IT IS SO ORDERED.**